COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia

MANDINGO LAMONT HAYWOOD

v.        Record No. 1408-17-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WESLEY G. RUSSELL, JR.
OCTOBER 9, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Samantha Offutt Thames, Assistant Public Defender, for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


As a result of his conditional guilty plea, Mandingo Lamont Haywood was convicted of

possession of a controlled substance with the intent to distribute as an accommodation.  Under

the terms of his conditional guilty plea, Haywood "reserve[d] the right to appeal the denial of

[his] Motion to Suppress heard and denied on May 22, 2017."  On appeal, he asserts that the trial

court erred in denying his motion to suppress.

Specifically, he argues that the trial court erred in finding that a drug dog's alert

indicating drugs on his person provided probable cause for his arrest and in finding that the

Commonwealth had established that the drug dog was reliable.  He also contends that the drug

dog's proximity to him when it alerted rendered the drug dog's smelling of the contraband a

"search" requiring independent probable cause.  For the reasons that follow, we affirm the

judgment of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

In reviewing a trial court's denial of a motion to suppress, we review the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences that flow from the evidence. Salahuddin v. Commonwealth, 67 Va. App. 190, 202, 795 S.E.2d 472, 478 (2017). So viewed, the evidence establishes that Benjamin Neifeld and Austin Darnell of the City of Richmond Police Department were assigned to a tactical unit responsible for investigating street level use and distribution of narcotics. On September 13, 2016, they responded to 3104 Enslow Avenue following a complaint of narcotics activity at that address. Neifeld described the area as a "high drug-trafficking area." When Neifeld and Darnell drove past the reported location in a marked police car, Neifeld saw a vehicle parked in the "middle of the alley" that ran behind 3104 Enslow Avenue. As Neifeld continued to drive through the area, he saw the vehicle moving from the alley behind 3104 Enslow Avenue into another alley before pulling out onto Carolina Avenue. Neifeld fell in behind the vehicle, noticed the license plate cover was obstructing the registration stickers, and initiated a traffic stop. Haywood was a passenger in the front seat of the vehicle. Neifeld testified that he had witnessed hand-to-hand drug transactions in that area within that past month, although he had never seen appellant before September 13.

Neifeld and Darnell asked both the driver and Haywood to step out of the vehicle. Neifeld requested that a drug dog come to the scene. Shortly thereafter, a drug dog, "Sara," arrived with her handler, Officer Robin Robinson.[1] When Robinson and Sara arrived, Haywood and the driver were standing outside the vehicle. Robinson activated her body camera and recorded Sara's activity around appellant, the driver, and the truck. Sara "immediately" alerted

---

[1] Haywood does not assert that the investigation of the traffic offense was elongated to allow for the drug dog to arrive or perform its work. Accordingly, this case does not implicate the rule set out in Rodriguez v. United States, 135 S. Ct. 1609 (2015).

to Haywood's waistband, but did not alert on the driver or the truck. On the body camera footage, Robinson can be heard asking Haywood, "You got something in your waistband?" to which he responded, "No, Ma'am." Robinson told the officers at the scene to "watch" appellant, stating that "[i]t's in his waistband." On the video recording, Robinson can be heard telling Neifeld and Darnell that Haywood has "either got it or it's going to be somewhere in here [the vehicle]."

Neifeld and Darnell placed Haywood in handcuffs. Robinson then had Sara conduct a sniff of the vehicle's exterior and the driver, but Sara did not alert on either. Robinson testified that there was no alert on the driver of the vehicle, but, "I continued on with the vehicle. It was a little hard because [Haywood] was – he was not that far, probably about there to where you're sitting right now, and she kept pulling on the vehicle to try to get back to him." When Robinson ran Sara past Haywood again, Sara alerted on him again. After Sara alerted on Haywood the second time, detectives searched his pockets and waistband, but found nothing. The driver was then allowed to leave the scene.

Neifeld and Darnell then took Haywood to a local police precinct. Once there, detectives conducted a thorough search and found cocaine in Haywood's waistband. The discovery of the cocaine led to the instant charge and was the subject of Haywood's motion to suppress.

On March 17, 2017, Haywood filed a written motion seeking to suppress the cocaine the police ultimately had discovered on his person. In his written motion, Haywood argued that the cocaine should be suppressed because Sara's reliability had not been established. Haywood based his reliability argument on the fact that he had yet to be provided any information regarding Sara's qualifications, training or service record and on the fact that Sara's reliability could be questioned because, despite her positive alert, the police had not discovered the drugs during their initial, roadside search of Haywood. Nowhere in his written motion did Haywood

argue that a drug dog's alert was insufficient to provide probable cause for an arrest. In fact, the word "arrest" does not appear in the written motion.

At the hearing on the motion to suppress, the Commonwealth called as witnesses Neifeld, Darnell, and Robinson to establish what occurred during the encounter. In addition to their testimony regarding the events surrounding the stop and subsequent search, the Commonwealth offered into evidence the video recording from Robinson's body camera.

To establish Sara's reliability, the Commonwealth had Robinson explain her experience and detail her work with Sara over a period of years. Robinson testified that she had been with the Richmond Police Department for twenty-five years and she is what is referred to in canine training as a master trainer, a certification received through the Virginia Police Work Dog Association. She had nineteen years of working with canines and was certified as a master trainer in 2011. Robinson explained the extensive training a dog handler must go through for certification, including a fourteen-week school. The training follows United States Customs guidelines.

Robinson explained Sara's training, the number of times she had been certified, and their history as a team. In addition to Robinson's testimony regarding Sara, the Commonwealth introduced Sara's annual certifications from the Virginia Police Work Dog Association for the years 2011-2016. The certifications established that Sara had demonstrated 100% accuracy at every yearly certification test.

During cross-examination, using his interpretation of the body camera footage, Haywood's counsel asked Robinson on multiple occasions whether Sara had actually alerted on Haywood. Robinson rejected the premise of the questions, explaining how she determines when Sara has alerted. When pressed further, Robinson explained:

> It is very clear to me as the handler. It does not have to be clear at that point to you.

Because I'm the handler[,] I'm the only one that can read this dog. When we do certifications, it's the same thing. If a person is there, I call the alert, I praise her, I move on. We don't sit there with the dog. It has no added benefit to do that.

After the evidence had been presented, Haywood argued that the cocaine should be suppressed. As he had in his written motion, Haywood argued that Sara's reliability had not been established sufficiently. In addition to reiterating the argument advanced in his written motion, Haywood argued that because Sara's nose was "inches from where [Haywood] was" when she alerted, the dog sniff amounted to a search for which independent probable cause was required. Haywood did not argue at the hearing that a dog sniff can provide probable cause to search, but cannot provide probable cause to arrest.

After the trial court denied his motion to suppress, Haywood entered into a conditional guilty plea. He pled guilty to possession of a controlled substance with the intent to distribute as an accommodation, but expressly "reserve[d] the right to appeal the denial of [his] Motion to Suppress heard and denied on May 22, 2017." This appeal followed.

ANALYSIS

In challenging the trial court's denial of his motion to suppress, Haywood "bears the burden of showing that the ruling, 'when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" Sanders v. Commonwealth, 64 Va. App. 734, 743, 772 S.E.2d 15, 19 (2015) (internal quotation marks omitted) (quoting McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*)). In conducting our review, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

I. Rule 5A:18 bars our consideration of Haywood's first assignment of error.

In his first assignment of error, Haywood argues that the search at the precinct occurred after he was arrested and that his arrest was not supported by probable cause. Specifically, he argues that, although Virginia "courts have held that positive alerts from properly trained narcotic dogs give rise to probable cause to search," the standard for probable cause to arrest is (or at least should be) a higher standard and "a drug dog's alert is not enough to justify an arrest." He also argues that Sara's "alert was proven false on the scene" when the officers' initial roadside search revealed no drugs, and therefore, any probable cause to arrest provided by Sara's alert had dissipated. Before addressing the merits of these arguments, the Commonwealth contends that the arguments are barred by Rule 5A:18. We agree with the Commonwealth.

Rule 5A:18, often referred to as the contemporaneous objection rule, provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."[2] The purpose of the Rule "is to allow the trial court a fair opportunity to resolve the issue at trial . . . ." Creamer v. Commonwealth, 64 Va. App. 185, 195, 767 S.E.2d 226, 231 (2015). To resolve an issue, a trial court must be alerted to the precise issue being raised, see Kelly v. Commonwealth, 42 Va. App. 347, 354, 592 S.E.2d 353, 356 (2004), and thus, the Rule requires that arguments be made with specificity in order to preserve an issue for appeal. Nelson v. Commonwealth, 50 Va. App. 413, 420-21, 650 S.E.2d 562, 566 (2007); see also Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (holding that, pursuant to the Rule, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review").

---

[2] Haywood does not contend that the limited ends of justice exception applies to this case; rather, his only argument in response to the Commonwealth is that the argument was sufficiently raised below to satisfy the requirements of Rule 5A:18.

Here, the trial court was not presented with the arguments Haywood raises in this assignment of error. The written motion to suppress challenged Sara's reliability as a drug dog, but did not assert that there is a different standard for probable cause to arrest as opposed to search and that the officers lacked probable cause to arrest when the initial search failed to discover the drugs that Sara had detected. In fact, as noted above, the word "arrest" does not even appear in the written motion.[3]

Similarly, Haywood did not present these arguments to the trial court at the hearing on the motion to suppress. Once again, his arguments focused on Sara's reliability, not whether the officers had probable cause to arrest. He did assert an argument that was outside the scope of his written motion; however, that argument did not address whether the officers had probable cause to arrest. Rather, he argued that, because of Sara's proximity to him when she alerted, the dog sniff constituted a search that required probable cause independent of Sara's alert.

The failure of Haywood to raise his probable cause to arrest arguments in the trial court is fatal to these claims on appeal. Because Haywood did not present the trial court with an opportunity to address his arguments regarding probable cause to arrest, Rule 5A:18 bars us from considering them on appeal.

---

[3] In his reply brief in this Court, Haywood argues that his written motion to suppress sufficiently raised these arguments. Specifically, he contends that his statement in the motion that the "officers unlawfully took Mr. Haywood into *custody* and conducted an unlawful search after a false positive was detected in the vehicle and no drugs were found in the [initial roadside] search of Mr. Haywood." (Emphasis added). We disagree for multiple reasons. First, as Haywood conceded at oral argument in this Court, "custody" and "arrest" are not synonymous. See Lovelace v. Commonwealth, 258 Va. 588, 596, 522 S.E.2d 856, 860 (1999) (recognizing that a police detention is not the equivalent of an arrest). Thus, an argument about custody does not necessarily raise an argument about arrest. Next, the line that Haywood excises from the motion is in the middle of the argument that a failure of the Commonwealth to establish Sara's reliability renders the subsequent search "unlawful." Context matters. From the text surrounding this one line, the trial court could not have divined that it had anything to do with a probable cause to arrest argument. Finally, we note that the cited language did not concern a probable cause to arrest argument because, when arguing the motion in which the line appears before the trial court, Haywood made no such argument regarding probable cause to arrest.

II.  The trial court did not err in finding Sara sufficiently reliable.

In his second assignment of error, Haywood contends that the trial court erred in finding that Sara "was sufficiently reliable" for the police to conclude that her positive alerts regarding Haywood made it probable that he possessed illegal drugs.  Because the record contains more than sufficient evidence to support the trial court's conclusion that Sara was reliable, we disagree with Haywood.

Haywood correctly asserts that it is not enough for the police to testify that a dog alerted them to the possible presence of drugs or other contraband; it must be established that the dog in question is trained to alert to the scent of drugs or other contraband and that, through some combination of training and experience, the reliability of the dog's alert regarding the potential presence of drugs and contraband has been established.  See Florida v. Harris, 568 U.S. 237 (2013); Jones v. Commonwealth, 277 Va. 171, 179-80, 670 S.E.2d 727, 732 (2009).

In Harris, the United States Supreme Court held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert," and thus, meet the constitutional requirement.  568 U.S. at 246.  Here, the Commonwealth offered not only evidence that Sara had completed an initial training program, but also introduced evidence that she had received annual certifications from the Virginia Police Work Dog Association for the years 2011-2016.  The evidence established that she never had a false alert during those certifications.  Coupled with the evidence of Robinson's training and experience, the history of Robinson and Sara as a team, and Robinson's testimony that Sara alerted consistent with her training, there is more than sufficient evidence to support the trial court's conclusion that Sara was reliable.

Despite the evidence of Sara's history of reliability, Haywood argues that she proved unreliable in this case.[4] Specifically, he argues that the fact that the initial roadside search did not reveal the drugs Haywood possessed meant that Sara's "positive alert had been proven to be unreliable." In short, Haywood argues that the failure to find the drugs in the initial, roadside search vitiated any reasonable belief regarding his possession of drugs that Sara's positive alert could have provided. We disagree.

Arguing that the reasonableness of the officers' actions turns only on what they knew at the time of their initial, roadside search, Haywood asserts that they should have concluded that Sara was wrong in this case when they did not immediately discover the drugs.[5] This argument, however, ignores other information that the officers knew. First, given the demonstrated usefulness of drug dogs in detecting drugs that human observation may miss, it was reasonable for the officers to continue to believe Sara was right even though they did not immediately find contraband. Furthermore, the officers knew how thorough their initial search was and the limitations placed on that search posed by the location where it occurred, a public roadway. Given this, the officers reasonably and rationally could conclude that a more complete search done in the relative privacy of the precinct house would lead to the discovery of drugs that Sara's multiple alerts indicated were there.

---

[4] In the written motion in the trial court, Haywood also raised questions about Sara's reliability generally, noting that records regarding her reliability had been requested but not yet received. Given the overwhelming evidence of Sara's history of reliability, the argument here focuses on the claim, also made below, that Sara proved unreliable in this case.

[5] Although the officers' actions are judged by what they knew at the time, we note that, as a factual matter, Sara was neither mistaken nor proven unreliable in this case. She alerted twice on Haywood, indicating that he possessed drugs. According to Robinson, Sara's alert indicted that the drugs were somewhere in Haywood's pants. The drugs were ultimately recovered from Haywood in the area where Sara indicated the drugs would be found.

In short, nothing about the initial, roadside search was such that it required the officers to overlook Sara's extensive and impressive record of reliability in detecting drugs and conclude that her two alerts were mistaken. Accordingly, the trial court did not err in concluding that Sara was sufficiently reliable to provide the basis for the officers' actions.

### III. The proximity of Sara to Haywood when she alerted did not convert the encounter into a Fourth Amendment search.[6]

In his final assignment of error, Haywood argues that, because Sara was in close proximity to him when she alerted, the encounter was, in and of itself, a Fourth Amendment search requiring either probable cause or a warrant. We disagree.

The United States Supreme Court consistently has held that a drug dog's sniff in a public place is not a search for Fourth Amendment purposes. See, e.g., Illinois v. Caballes, 543 U.S. 405, 410 (2005); United States v. Place, 462 U.S. 696, 707 (1983). Applying the rule of these cases, we recently observed that "[t]he law is well established that a canine sniff, standing alone, is not a search for purposes of the Fourth Amendment." Sanders, 64 Va. App. at 753, 772 S.E.2d at 24.

The rationale underlying this conclusion is tied to the limited nature of the intrusion, Place, 462 U.S. at 707 (finding that "the canine sniff is *sui generis* . . . [and that] no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure"), and the fact that the odors detected by a drug dog in a public place simply are not private for Fourth Amendment purposes.

---

[6] In his opening brief in this Court, Haywood argues that "When Sara *touched* Mr. Haywood, or came into extremely close proximity to Mr. Haywood's person, that contact constituted a search under the Fourth Amendment." (Emphasis added). In the trial court, Haywood never argued that Sara touched him or that such contact converted a routine dog sniff into a Fourth Amendment search. Rather, he only argued that proximity (Sara being "inches away" when she alerted) converted the dog sniff into a Fourth Amendment search. Because the contact argument was not made below, we cannot consider it on appeal, Rule 5A:18, and thus, we express no opinion as to whether such contact would alter the analysis.

Sanders, 64 Va. App. at 755, 772 S.E.2d at 25.  As we observed when we adopted the "plain smell doctrine," "[a]n individual, after all, has no privacy interest in his odors.  He cannot broadcast an unusual odor (particularly one associated with illegal drugs) and reasonably expect everyone he comes into contact with, including police officers, to take no notice of it."  Bunch v. Commonwealth, 51 Va. App. 491, 497, 658 S.E.2d 724, 726 (2008).

Conceding that this is the general rule, Haywood argues that the proximity of Sara to him at the time of the alert constitutes an exception to that rule analogous to the exception recognized by the United States Supreme Court in Florida v. Jardines, 569 U.S. 1 (2013).  In Jardines, the high Court held that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment."  Id. at 11-12.  This conclusion, however, was based on *where* the dog was deployed, the curtilage of the home (an area long held to be within the protections of the Fourth Amendment), as opposed to the dog using its power of smell to detect contraband.  Sanders, 64 Va. App. at 754, 772 S.E.2d at 24.

Here, Sara was not brought into a protected area such as the curtilage of Haywood's home.  Rather, she encountered him on a public street.[7]  That geographic difference is significant and places this case firmly within the general rule regarding the sniffs of drug dogs and outside the exception to that rule announced in Jardines.  Accordingly, Sara's alerts did not constitute searches for the purposes of the Fourth Amendment.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

---

[7] The fact that the encounter began with Haywood in the car on a public street is immaterial.  He does not (and on this record cannot) challenge either the stop of the vehicle or the officers' request that he exit the vehicle.