COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Chafin and AtLee
Argued at Lexington, Virginia

FRANCES LYNCH

v.      Record No. 1437-18-3

BEDFORD COUNTY DEPARTMENT OF
  SOCIAL SERVICES AND VIRGINIA
  DEPARTMENT OF MEDICAL ASSISTANCE SERVICES

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
JUNE 11, 2019

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

> Kathleen C. Morris (sb2 inc., on briefs), for appellant.
>
> Michelle A. L'Hommedieu, Assistant Attorney General (Mark R.
> Herring, Attorney General; Cynthia V. Bailey, Deputy Attorney
> General; Kim F. Piner, Senior Assistant Attorney General/Section
> Chief; on brief), for appellee Virginia Department of Medical
> Assistance Services.
>
> No brief or argument for appellee Bedford County Department of
> Social Services.

Appellant Frances Lynch[1] challenges the Circuit Court of Bedford County's ruling that

Lynch's Medicaid Authorized Representative, Oakwood Health and Rehabilitation Center

("Oakwood"), did not have standing to appeal the Department of Medical Assistance Services'

("DMAS's") administrative decision to the circuit court.  For the following reasons, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Lynch granted her son, Clyde Lynch, power of attorney, and he acted on her behalf
during the course of agency proceedings and subsequent litigation.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the appellees, who prevailed before the circuit court. Surles v. Mayer, 48 Va. App. 146, 156 (2006). So viewed, the evidence is as follows.

Lynch is a resident at Oakwood, which provides her with full time medical care and assistance. She applied for Medicaid coverage and appointed Oakwood as her Medicaid Authorized Representative. The Bedford County Department of Social Services ("DSS") denied Lynch's application for Medicaid coverage. Lynch, through Oakwood, appealed DSS's decision to DMAS, which affirmed. Lynch then appealed DMAS's ruling to the circuit court. It is undisputed that Lynch was the sole appellant throughout the proceedings. DMAS filed a plea in bar requesting that the circuit court dismiss the case for lack of standing because counsel from sb2 represented Oakwood, not Lynch, and Oakwood was not a named party. The circuit court granted the plea in bar and dismissed the case, noting that "this appeal was not duly perfected by Lynch or by counsel on her behalf." This appeal followed.

II. ANALYSIS

The parties raise a number of arguments concerning how this Court ought to interpret 42 CFR § 435.923[2] with regard to legal proceedings following agency (in this case, DSS and

---

[2] In pertinent part, this section outlines the procedure for designating, and the responsibilities or powers of, an authorized representative. It allows "applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency." 42 CFR § 435.923(a)(1). Under this section,

[a]pplicants and beneficiaries may authorize their representatives to—
(1) Sign an application on the applicant's behalf;
(2) Complete and submit a renewal form;
(3) Receive copies of the applicant or beneficiary's notices and other communications from the agency;
(4) Act on behalf of the applicant or beneficiary in all other matters with the agency.

DMAS) review. Because we find that the pleadings before the circuit court were not signed by either Lynch or an attorney representing her as required under Virginia law, the appeal of the agency decision to the circuit court was not perfected. Thus, we rule solely on those grounds and decline to construe the federal regulation's application to an authorized representative's authority in judicial proceedings subsequent to the agency's review. See Sanders v. Commonwealth, 64 Va. App. 734, 742 n.3 (2015) ("An appellate court decides cases on the best and narrowest ground." (quoting Luginbyhl v. Commonwealth, 48 Va. App. 58, 64 (2006) (*en banc*))).

A. *Signature Requirements for Pleadings in Virginia*

Code § 8.01-271.1[3] and Rule 1:4(c)[4] require either a litigant, if *pro se*, or her Virginia-admitted attorney to sign documents in judicial proceedings. Here, all of Lynch's pleadings were signed by an attorney from sb2, who before both the trial court and this Court explained that they represented Oakwood, not Lynch.

In Richmond Ass'n of Credit Men v. Bar Ass'n of City of Richmond, 167 Va. 327 (1937), the Supreme Court addressed an analogous set of facts involving vicarious

---

42 CFR § 435.923(b). Lynch argues that this regulation permits counsel retained by an authorized representative to appear on behalf of the Medicare applicant in court proceedings despite there being no direct attorney-client relationship between counsel and the applicant. Absent more explicit language, we cannot say that this regulatory language creates a fiduciary relationship with the broad scope appellant contemplates. We also disagree that this federal regulation, as written, serves to supersede or modify established rules of pleading and practice in Virginia.

[3] With some exceptions that are inapplicable here, "every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name . . . . A party who is not represented by an attorney . . . shall sign his pleading, motion, or other paper . . . ." Code § 8.01-271.1.

[4] "Counsel or an unrepresented party who files a pleading shall sign it and state his address." Rule 1:4(c); see also Rule 1:5.

representation. It found that a credit union was engaged in the unauthorized practice of law[5] when it retained attorneys to litigate claims on behalf of its members while maintaining control over those attorneys. Id. at 334. The Court did not agree with the credit union's assertion that it was merely acting as an "intermediary" for those members, as no attorney-client relationship existed between the named litigants (the members) and the attorneys signing pleadings and purportedly appearing on their behalf. Id. The Court noted that the credit union selected the attorneys, the members did not communicate with or supervise their purported legal counsel, and the credit union retained control over the attorneys' compensation and employment. Id. at 336-38. The Court held that "[a] lawyer's relation to his client should be personal, and the responsibility should be direct to the client. Charitable societies rendering aid to the indigent are not deemed such intermediaries." Id. at 339 (quoting Va. State Bar Ass'n Reports (1935), volume XLVII, page 350). This requirement of a direct relationship between attorneys and their clients is further reflected in the Virginia Bar's Rules of Professional Conduct, which notes that although a third party may fund litigation, there may be "no interference with the . . . client-lawyer relationship . . . ." Rules of Professional Conduct Rule 1.8(f)(2).

### B. *Evidence of Lynch's Relationship to Counsel*

The circuit court here concluded that the appeal from the DMAS decision was not perfected because the pleadings were not signed by Lynch "or by counsel on her behalf." Although there are some ambiguities in the record (specifically from appellant counsel's

---

[5] Although it does not on its face seem like the "unauthorized practice of law" as the phrase is colloquially used, given that the pleadings were signed by counsel admitted to practice in Virginia, the crux of the issue is that counsel, as we see both here and in Richmond Ass'n of Credit Men, did not represent the aggrieved party named in the suit.

attempts to backtrack after DMAS challenged their standing in the proceeding), this finding is supported by the evidence.[6]

Although it is not dispositive, we note that no engagement letter exists establishing an attorney-client relationship between Lynch and sb2. This is consistent with counsel's repeated explanations at trial and before this Court that Oakwood retained sb2 to represent it in its capacity as authorized representative for Lynch.[7] Before the circuit court, counsel explained that "Oakwood, acting as the duly appointed authorized representative, retained our firm to represent Ms. Lynch's interest." At another point, counsel stated "I'm an attorney for, um, for Oakwood as their authorized representative for Frances Lynch." Finally, on the final order from the circuit court, counsel noted her objections and made numerous edits to the signature block,[8] but nevertheless declined to correct the signature block's description of her as "Counsel for Oakwood Health and Rehabilitation." Moreover, considering the factors discussed in Richmond Ass'n of Credit Men, we conclude that the evidence suggests that Oakwood, not Lynch, retained primary control and authority over sb2's actions during litigation.

Without an attorney-client relationship between Lynch and sb2, counsel owes no ethical or fiduciary relationship to Lynch. The fact that Oakwood was acting as Lynch's authorized representative under federal Medicaid regulations does not supplant or erode the requirement that

---

[6] Even on appeal to this Court, counsel made it clear that sb2 represented Oakwood, not Lynch. Named counsel signed appellant's brief to this Court as "Counsel for Appellant Oakwood, A/R for Lynch." Furthermore, at oral argument, this Court inquired: "You represent Oakwood in its capacity as authorized representative for Frances Lynch, is that correct?" Counsel responded "Absolutely."

[7] At oral argument, counsel noted that the structure and terms of their firm's engagement accommodates the fact that, frequently, those individuals requiring the assistance of an authorized representative are unable to adequately communicate with counsel, travel for meetings, etc. Yet that explanation does not erase the need for an attorney-client relationship between a named litigant and counsel signing pleadings ostensibly on her behalf.

[8] A different attorney from sb2 represented Oakwood earlier in the litigation.

there must be an attorney-client relationship between the litigant, in this case Lynch, and counsel appearing and signing pleadings on her behalf. Here, counsel's ethical duty is to Oakwood, not Lynch, and Oakwood is not a named party to this matter. These repeated representations and acknowledgements that sb2 represents Oakwood, not Lynch, require us to conclude that the pleadings failed to satisfy the requirements under Code § 8.01-271.1 and the Rules, having not been signed either by Lynch or an attorney representing her. Accordingly, the circuit court did not err in concluding that sb2 did not represent Lynch and that, accordingly, the pleadings before the circuit court did not satisfy the signature requirements under Virginia law.

### III. CONCLUSION

The circuit court did not err in finding that Lynch had not perfected her appeal because neither she nor her attorney signed any pleadings submitted to the circuit court. Accordingly, we affirm.

<u>Affirmed.</u>