COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Malveaux and Athey
Argued by videoconference


JUDE JOSEPH DAVID LOVCHIK

v.     Record No. 1094-19-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
OCTOBER 20, 2020


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Dawn M. Butorac, Public Defender, for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jude Joseph David Lovchik ("appellant") was convicted of statutory burglary, in

violation of Code § 18.2-90; four counts of robbery, in violation of Code § 18.2-58; four counts

of abduction with intent to defile, in violation of Code § 18.2-48; four counts of forcible sodomy,

in violation of Code § 18.2-67.1; and four counts of use of a firearm in the commission of a

felony, in violation of Code § 18.2-53.1.  On appeal, he argues the trial court erred by denying

his motion to suppress DNA evidence obtained from his trash and from his person.  For the

following reasons, we affirm the trial court.

I.  BACKGROUND

On appeal of the denial of a motion to suppress, we consider the evidence introduced at

both the suppression hearing and the trial.  Salahuddin v. Commonwealth, 67 Va. App. 190, 202

(2017).  Further, "[u]nder familiar principles of appellate review, we will state 'the evidence in

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the light most favorable to the Commonwealth, the prevailing party in the trial court.'" Chavez v. Commonwealth, 69 Va. App. 149, 153 (2018) (quoting Sidney v. Commonwealth, 280 Va. 517, 520 (2010)).

In June 1995, T.R. and her female friends J.P., C.R., and A.P. lived together in a Reston apartment.[1]  In the early hours of June 6, a man wearing a black ski mask and gloves and carrying a handgun entered the apartment and forced the four women into a bedroom.  After blindfolding the women and making them remove their clothes, the man compelled each of them to perform fellatio.

T.R. testified that the man required her to swallow his semen.  He then ordered her to drink Gatorade, and she complied.  The man eventually left the apartment after taking money from the women.

The roommates contacted the police and went to the hospital.  The Virginia Department of Forensic Science ("VDFS") analyzed an oral rinse sample obtained from T.R. at the hospital and developed a male DNA profile from the rinse.

In 2001, T.R.'s oral rinse sample was reanalyzed by VDFS.  Using the more advanced testing systems available at that time, VDFS developed a more refined DNA profile and issued a new certificate of analysis for the sample.

In November 2016, Kathrin Lovchik, appellant's then wife, contacted police and told them about a conversation she had with appellant in 2009.  During that conversation, appellant told Lovchik that he was "the Fairfax County rapist."  Appellant described assaulting numerous women in their homes, sometimes during incidents involving multiple victims.  He told Lovchik that "his big thing was oral sex, so . . . he forced them to have oral sex with him."  He also described ejaculating and making his victims drink Coke afterwards to eliminate evidence.

---

[1] We use the victims' initials, rather than their names, to protect their privacy.

Appellant showed Lovchik a black ski mask that he kept in a closet and claimed he had worn the mask when assaulting his victims. He also told Lovchik that he had used a gun to keep his victims quiet. According to Lovchik, appellant owned a pistol which he had buried in their backyard.

Based upon Lovchik's information, Fairfax County police began investigating appellant. To obtain a sample of appellant's DNA, police collected discarded trash and recyclables from containers on the street outside appellant's home. A detective examined the retrieved items to identify those that might yield DNA and selected a beer bottle, a bag containing cigarette butts, and a plastic cup containing shells from sunflower seeds.

VDFS developed a male DNA profile from the selected items. In its certificate of analysis, VDFS concluded that the contributor of the DNA could not be eliminated as a contributor of the male DNA developed from T.R.'s oral rinse sample in 2001.

After receiving the certificate of analysis, police secured a search warrant to obtain buccal swabs and other biological samples from appellant. VDFS developed a DNA profile from appellant's buccal swabs and determined that appellant could not be eliminated as a contributor of the male DNA profile developed from T.R.'s oral rinse sample in 2001. Further, appellant could not be eliminated as a contributor of the DNA profile developed from the beer bottle, cigarette butts, and shells. In its certificate of analysis, VDFS concluded that the probability of randomly selecting a person unrelated to appellant with a DNA profile that matched either of the two extant DNA profiles was 1 in greater than 7.2 billion.

Appellant was indicted for the 1995 offenses. He filed a motion to suppress the evidence obtained through the "search of DNA" found on his trash and recyclables as well as the DNA

evidence developed through the subsequent search warrant.[2]  Appellant argued that he had a reasonable expectation of privacy in his DNA and thus the warrantless testing of DNA from his trash and recyclables to develop a profile constituted a search under the Fourth Amendment.

The trial court denied appellant's motion to suppress.  It characterized appellant's argument as "essentially asking the [c]ourt to rule that a person has a reasonable expectation of privacy in his or her DNA regardless of the circumstances.  Basically, an inher[en]t privacy . . . right to [the] DNA profile regardless of where it is found."  The court noted that the police had not invaded appellant's person, houses, papers, or effects, but had simply collected trash and recyclables that appellant had abandoned and held out to the public.  Thus, appellant's DNA had been lawfully seized and "it was not a search under the Fourth Amendment, because it was abandoned."  The court concluded that

> there can be no reasonable expectation of privacy to the DNA
> profiling, if there's not first a privacy right to the collection of the
> DNA.  In this particular case, there was no reasonable expectation
> of privacy of the trash that contained the DNA on it.  Therefore,
> there is no reasonable expectation of privacy with the identification
> test of the unknown DNA located on the abandoned trash.

This appeal followed.

## II.  ANALYSIS

Appellant argues the trial court erred by denying his motion to suppress because even though he had abandoned the items that carried his DNA, he still retained a reasonable expectation of privacy in the information contained within his DNA.  Thus, because the police did not have a warrant to obtain a DNA profile, "any search of the extracted biological material

---

[2] Appellant also moved to suppress the beer bottle, cigarette butts, and shells collected from outside his home, arguing that police had seized them from his curtilage without a warrant. The trial court disagreed, finding that the items had been placed on the street and thus were abandoned property from which appellant had relinquished any subjective and objective privacy interests.  Appellant does not challenge on appeal the finding that the items lawfully came into the possession of the police.

to conduct DNA testing should have been suppressed." Appellant further argues that the DNA profile developed from the buccal swabs should have been suppressed because the warrant for the swabs derived from an unlawfully obtained DNA profile.

"When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and 'will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'" Taylor v. Commonwealth, 70 Va. App. 182, 186 (2019) (quoting Sidney, 280 Va. at 520). The appellant "has the burden of showing that even when the evidence is reviewed in that light, denying the motion to suppress was reversible error." Id. In reviewing the trial court's ruling, we are "bound by [its] findings of historical fact unless 'plainly wrong,' and we 'give due weight to the inferences drawn from those facts' by the trial judge and law enforcement." Salahuddin, 67 Va. App. at 202 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)). "We review *de novo* the trial court's application of the law to the particular facts of the case." Taylor, 70 Va. App. at 186.

"The Fourth Amendment of the United States Constitution provides '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Sanders v. Commonwealth, 64 Va. App. 734, 743 (2015) (alteration in original) (quoting U.S. Const. amend. IV); accord Va. Const. art. I, § 10 (prohibiting general warrants of search and seizure). However, the Fourth Amendment "does not proscribe all searches, only those that are 'unreasonable.'" Hodnett v. Commonwealth, 32 Va. App. 684, 690 (2000) (quoting Welshman v. Commonwealth, 28 Va. App. 20, 30 (1998) (*en banc*)). "Since the Supreme Court's decision in Katz v. United States, 389 U.S. 347 (1967), 'the touchstone' of Fourth Amendment analysis has been 'the question whether a person has a "constitutionally

protected reasonable expectation of privacy.""" Salahuddin, 67 Va. App. at 202-03 (quoting Oliver v. United States, 466 U.S. 170, 177 (1984)).

"Whether an individual has a legitimate expectation of privacy in a particular item involves a two-pronged test. 'First, a defendant must show "that he personally has an expectation of privacy in the [item] searched."'" Williams v. Commonwealth, 71 Va. App. 462, 479 (2020) (alteration in original) (citations omitted) (quoting Rideout v. Commonwealth, 62 Va. App. 779, 786 (2014)). "This subjective determination is a finding of fact entitled to deference on appeal." Salahuddin, 67 Va. App. at 203. "'Second, a defendant must prove that his subjective expectation of privacy is one that society is prepared to recognize as objectively reasonable.' This is a legal determination that we review *de novo*." Williams, 71 Va. App. at 479 (citation omitted) (quoting Salahuddin, 67 Va. App. at 203). Proof that an expectation of privacy is objectively reasonable must be "based on 'a source outside of the Fourth Amendment.' The defendant may establish such a source by reference to either: (1) 'concepts of real or personal property law' or (2) 'understandings that are recognized and permitted by society.'" Sanders, 64 Va. App. at 744 (citation omitted) (first quoting Rideout, 62 Va. App. at 786; then quoting United States v. Jones, 565 U.S. 400, 408 (2012)). "In determining whether an expectation of privacy is objectively reasonable, a court looks to the totality of the circumstances." Atkins v. Commonwealth, 57 Va. App. 2, 13 (2010).

Assuming without deciding that appellant established he had a subjective expectation of privacy in the information contained in his DNA, we conclude that such an expectation was not objectively reasonable under the facts of this case. Thus, there was no Fourth Amendment violation when police developed a DNA profile for identification purposes using DNA from items discarded by appellant.

We note that the United States Supreme Court has considered "whether the Fourth Amendment prohibits the warrantless search and seizure of garbage left for collection outside the curtilage of a home" and "conclude[d] . . . that it does not." California v. Greenwood, 486 U.S. 35, 37 (1988). The Court determined that a Fourth Amendment violation could occur "only if [a defendant] manifested a subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable," and "society would not accept as reasonable [a] claim to an expectation of privacy in trash left for collection in an area accessible to the public." Id. at 39, 41.

Here, the trial court found that appellant's trash and recyclables had been placed on a public street for pickup and thus were abandoned property in which appellant retained no objective privacy expectation. Appellant does not contest that the items that carried his DNA were put on a public street for collection. Since they bore his DNA, those items necessarily also carried appellant's DNA profile. Thus, when appellant abandoned the items that carried his DNA, he not only relinquished any objectively reasonable right to privacy in those items, but also any such right to privacy in the DNA profile developable from those items to identify him.[3]

We acknowledge that the gravamen of appellant's argument is that he retained an objectively reasonable right to privacy in his DNA profile because of the breadth and depth of

---

[3] Our holding comports with prior decisions of our appellate courts affirming convictions based in part upon DNA profiles developed in circumstances like those here—*i.e.*, where profiles were developed from DNA traces found on abandoned items. See, e.g., Crawford v. Commonwealth, 55 Va. App. 457 (2009) (*en banc*) (holding that the evidence was sufficient to sustain the defendant's convictions based in part upon DNA recovered from cigarette butts found at the murder scene); Juniper v. Commonwealth, 271 Va. 362 (2006) (same, where DNA was recovered from a knife left at the crime scene and a cigarette butt found by the victim's front door); Muhammad v. Commonwealth, 269 Va. 451 (2005) (same, where DNA was recovered from multiple items found near the murder sites, including a ballpoint pen, a candy wrapper, and a duffel bag); Lovitt v. Commonwealth, 260 Va. 497 (2000) (same, where DNA was recovered from a pair of scissors identified as the murder weapon that was found in the woods near the killing); Mickens v. Virginia, 247 Va. 395, rev'd on other grounds, 513 U.S. 922 (1994) (same, where DNA was recovered from cigarette butts found at the crime scene).

personal information such a profile may provide—including, as noted by appellant, "medical conditions, diseases and genetic disorders[,] . . . ancestry," health risks, "and even the probability that one is impulsive or violent." On this basis, appellant contends, society would recognize as reasonable an ongoing expectation of privacy in one's DNA profile even after one's DNA is abandoned. However, nothing in the record indicates that police used appellant's DNA profile for any purpose other than identification through comparison with known DNA profiles associated with prior criminal offenses. Further, appellant presents no argument on brief that any private medical or other highly personal information putatively derivable from his DNA profile was, in fact, developed by police.[4]

We further acknowledge appellant's contention that a different result is compelled here by the Supreme Court's ruling in Skinner v. Railway Labor Executives' Assoc'n, 489 U.S. 602 (1989). However, Skinner is clearly distinguishable because in that case, the biological material that was analyzed was obtained through compulsion, which was absent here. Id. at 608-13. Additionally, Skinner involved workplace drug and alcohol testing by private employers acting under federal regulatory authority, and thus the Court conducted its analysis in the context of the "special needs doctrine" which permits suspicionless searches in certain narrowly defined situations. Id. at 619-21. That doctrine is inapplicable to the instant case. See also Anderson v. Commonwealth, 274 Va. 469, 476 n.3 (2007) (noting that the special needs doctrine applies to testing and analysis in "public schools, public employment, and pervasively regulated industries").

---

[4] Virginia's statutory scheme for the use of DNA profiles by law enforcement makes clear that such profiles may only be used for identification purposes and that more expansive, unauthorized uses are unlawful and subject to criminal penalties. See, e.g., Code §§ 9.1-903(B) and -1101(B)(2); Code §§ 19.2-270.5, -310.2:1, -310.5, and -310.6.

Appellant also relies upon <u>United States v. Davis</u>, 690 F.3d 226 (4th Cir. 2012), to support his argument that analysis to develop a DNA profile constitutes a search for Fourth Amendment purposes. However, as a Fourth Circuit opinion, <u>Davis</u> does not control the instant case. Further, like <u>Skinner</u>, it is factually distinguishable. The ruling in <u>Davis</u> applies narrowly to the facts of that case, in which DNA from a crime victim was retained and later analyzed without a warrant, and then used to identify that victim as the perpetrator of a separate crime. <u>Id.</u> at 244-46.

### III. CONCLUSION

Based upon the facts of the instant case, we conclude appellant had no objectively reasonable expectation of privacy in his DNA identification profile as developed from DNA found on objects he had abandoned. Thus, we hold that the trial court did not err by denying appellant's motion to suppress. Accordingly, we affirm.

<u>Affirmed.</u>